BOLIN, Justice.
This Court granted B.C.’s petition for certiorari review based on our recent decision in Ex parte L.J., 176 So.3d 186 (Ala.2014), in which this Court held that a juvenile court may exercise jurisdiction under § 12-15-114, Ala.Code 1975, of the Alabama Juvenile Justice Act, § 12-15-101 et seq., Ala.Code 1975 (“the AJJA”), over a termination-of-parental-rights action when the subject of the termination was not a *854 child alleged “to have committed a delinquent act, to be dependent, or to be in need of supervision.” We reverse and remand.

Facts and Procedural History

In 2008, B.C. (“the mother”) gave birth to a child. In October 2010, the Limestone Juvenile Court entered a judgment adjudicating A.H. (“the father”) to be the father of the child. On February 13, 2013, the mother filed a petition in the'juvenile court seeking to terminate the father’s parental rights to the child. In her petition, the mother alleged that the father had abandoned the child, that he had failed to maintain contact with the child, that he had failed to adjust his circumstances to fit the needs of the child, and that he had failed to provide financial support for the child. The mother did not allege that the child was dependent, delinquent, or in need of supervision.
On June 25, 2013, the juvenile court conducted a hearing on the mother’s petition at which ore tenus evidence was presented. The father did not attend the hearing, but he was represented by legal counsel at that hearing. The father’s attorney moved to dismiss the termination-of-parental-rights proceeding on ■ the ground of lack of subject-matter jurisdiction because, he argued, § 12-15-114(a), Ala.Code 1975, grants the juvenile court exclusive original jurisdiction only' over those juvenile'proceedings'in which the child is alleged to be dependent, delinquent, or in need of supervision. Section 12-15-114(a) states that “[a] dependency action shall -not include a custody dispute between parents.” Before an amendment to the AJJA effective April 9, 2014, § 12-15-114(c) provided that the juvenile court also'had exclusive original jurisdiction over proceedings “arising out of the above juvenile court proceedings,” i.e., arising out of dependency, delinquency, and child-in-need-of-supervision proceedings, as set out in subsection (a). The father noted that former § 12-15-3Q(b)(6), Ala.Gode 1975 (which had been part of the AJJA prior to 2008 amendments to the AJJA revising, renumbering,, and merging the AJJA with the Child Protection Act, § 26-18-1 et seq., Ala.Gode 1975 (“the GPA”)), provided that the juvenile court had jurisdiction over all termination-of-parental-rights proceedings. The father asserted that the legislature, when it enacted § 12-16-114, limited the juvenile court’s jurisdiction in termination-of-parental-rights proceedings to those eases “arising out of’ dependency, delinquency, and ehild-in-need-of-supervision proceedings. Because the mother did not allege that the child was dependent, i.e., without a fit parent to provide for the child’s care, the father argued that she, as a custodial parent, could not seek termination of his parental rights in the juvenile court. The juvenile court denied the father’s motion to dismiss.
On June 27, 2013, the juvenile court entered a judgment terminating the father’s parental rights. In that judgment, the juvenile court did not make a finding that the child was dependent, delinquent, or in need of supervision. The father timely filed his notice of appeal. A majority of the Court of Civil Appeals reversed the judgment of the juvenile court, holding that the judgment was void because the mother’s petition to terminate the father’s parental rights did not arise out of a dependency, delinquency, or child-in-need-of-supervision proceeding as required by § 12 — 15—114. A.H. v. B.C., 178 So.3d 850 (Ala.Civ.App.2013).

Discussion

In Ex parte L.J., supra, this Court explained that the 2008 amendments to the AJJA, which became effective January 1, 2009, revised and reorganized the CPA, *855 which, until then, governed cases involving the termination of parental rights, and essentially merged the OPA and the AJJA. The 2008 amendments to the-AJJA also revised and renumbered an earlier version of the AJJA, resulting in what we referred to in Ex parte L.J. as “the 2008 AJJA.” Former § 12-16-30(to)(2), Ala.Code 1975, for example, has been revised and is now set out in § 12-15—115(a)(1) and (a)(2), Ala. Code 1975.
In LJ, we noted:
“Under the former Juvenile Justice Act, § 12-15-30(a)[, Ala,Code 1975,] provided that the juvenile court had exclusive original jurisdiction over proceedings in which a child was alleged to be dependent, delinquent, or in need of supervision. Former § 12 — 15—30(b)(6) further provided that the juvenile court also had exclusive original jurisdiction over proceedings for the ‘termination of parental rights.’ ”
176 So.3d at 189.
Under the OPA, before the 2008 amendments merging the CPA and the AJJA, the legislature had allowed a parent to initiate such an action. In Ex parte Beasley, 564 So.2d 950 (Ala,1990), eoristruing the CPA, this Court held that a finding of dependency was not a requisite element of proof when one parent sought to terminate the parental rights of the other parent of the child. Ex parte L.J., 176 So.3d at 189.
In 2008, when the legislature merged the AJJA with the CPA and revised and renumbered both, the legislature set out the juvenile court’s jurisdiction in §§ 12-15-114, 12-15-115, and 12-15-116, Ala. Code 1975. With regard to whether a juvenile court" may exercise jurisdiction under- § 12-15-114 over a termination-of-parental-rights petition when the ground for seeking the termination does not involve a child alleged “to have committed a delinquent act, to be dependent, or to be in need of supervision,” this Court stated in Ex parte L.J..
“Section 12-15-114(a) grants the juvenile court exclusive original jurisdiction over juvenile proceedings where the. child is alleged to be dependent, delinquent, or in need of supervision. Section 12-15-114(a) states that- ‘a dependency action shall not include a custody dispute between parents.’ Section 12-15-114(c) goes on to provide that the juvenile court shall also have exclusive original jurisdiction over1 proceedings ‘arising out of the above juvenile court proceedings,’ i.e., dependency, delinquency; and child-in-need-of-supervision proceedings, as ■ set out in subsection (a). [1] Former § 12-15-30(b)(6) gave the juvenile court jurisdiction over all termination-of-parental-rights proceedings. Construing the language in § 12-15-114, the Court of Civil Appeals concluded'that the legislature had limited the juvenile court’s jurisdiction in termination-of-parental-rights proceedings to those cases ‘arising out of dependency, delinquency, and child-in-need-of-supervision cases. Because the mother did not allege that the child was dependent, i.e., without a fit parent to provide care, the Court of Civil Appeal's held that she, as a custodial parent, could not seek termination of thé other parent’s parental rights in the juvenile court.
“ ‘We note" that “[t]he intent of the Legislature is the polestar of statutory construction.” Siegelman v. Alabama Ass’n of School Bds., 819 So.2d *856 568, 579 (Ala.2001). See also Richardson v. PSB Armor, Inc., 682 So.2d 438, 440 (Ala.1996); Jones v. Conradi 673 So.2d 389, 394 (Ala.1995); Ex parte Jordan, 592 So.2d 579, 581 (Ala.1992). “[T]he starting point for all statutory interpretation is the language of the statute itself,” and “[i]f the statutory language is clear, no further inquiry is appropriate.” Federal Reserve Bank of Atlanta v. Thomas, 220 F.3d 1235, 1239 (11th Cir.2000). “If the statutory language is ambiguous, however, courts may examine extrinsic materials, including legislative history, to determine [legislative] intent.” Id. It is also true that “[i]n attempting to ascertain the legislative intent of a particular statute or provision therein, it is permissible to look to the law as it existed prior to such statute’s enactment.” Reeder v. State ex rel. Myers, 294 Ala. 260, 265, 314 So.2d 853, 857 (1975). In that connection, “courts [also] consider contemporaneous events surrounding enactment of the statute.” Baylor v. New Jersey Dep’t of Human Servs., Div. of Pub. Welfare, 235 N.J.Super. 22, 41, 561 A.2d 618, 628 (1989), aff'd, 127 N.J. 286, 604 A.2d 110 (1990).’
“Pinigis v. Regions Bank, 977 So.2d 446, 450-51 (Ala.2007).
“In Archer Daniels Midland Co. v. Seven Up Bottling Co. of Jasper, Inc., 746 So.2d 966, 969 (Ala.1999), this Court stated: ‘[W]hen circumstances surrounding the enactment of a statute east doubt on the otherwise clear language of the statute, we must look to other factors in determining, legislative intent.’ This Court further stated in Archer Daniels:
“ ‘As the plaintiff correctly points out, § 6 — 5—60[, Ala.Code 1975,] is not, on its face, limited to transactions involving intrastate commerce. We hasten to add, however, that there is no language in § 6-5-60 that conclusively indicates an intent on the Legislature’s part to regulate transactions involving the shipment of goods through interstate commerce. Because the language of § 6-5-60, standing alone, is not conclusive on the question of legislative intent, and because other factors, including the legislative history of Alabama’s antitrust statutes, as well as the state of the law at the time of their enactment, cast doubt on the original intent of the Legislature, we find it necessary to look beyond the language of the statute.’
“746 So.2d at 973.
“The foregoing rationale applies to this Court’s determination of legislative intent with respect to § 12-15-114. As our earlier discussion of the history of the 2008 AJJA indicates, it was well settled prior to the enactment of the 2008 AJJA that juvenile courts had exclusive original jurisdiction over all termination-of-parental-rights petitions. This included a petition filed by a parent seeking to terminate the parental rights of the other parent of the child, based on our decision in Ex parte Beasley [, 564 So.2d 950 (Ala.1990),] in which we held that a finding of dependency was not required in such a case. We stated in Beasley that it would be illogical for a parent, who is adequately caring for the child, to have to prove that he or she is not providing adequate care (i.e., that the child is dependent) in order to bring such an action, because the petitioning parent would then be estopped from bringing the action. In light of the history of the 2008 AJJA, if the legislature had intended for the circuit court, as a court of general jurisdiction, to now have jurisdiction over termination petitions filed by one parent against the *857 other parent, it would not have done so by legislative silence. Additionally, it is unlikely that the legislature would place jurisdiction over termination petitions in two different courts.
“It is also unlikely that the legislature, in providing that the juvenile court has jurisdiction of termination petitions arising out of dependency, delinquency, or child-in-need-of-supervision proceedings, intended to prohibit one parent from filing a petition seeking to terminate the parental rights of the other parent. As Judge Pittman noted in his dissent in C.C. v. L.J., 176 So.3d 183 (Ala.Civ.App.2013),] the legislature, in adopting the entirety of the 2008 AJJA, provided that a parent may bring a petition to terminate the parental rights of the other parent of the child. § 12-15-317. If the legislature intended to foreclose a parent from bringing a termination petition by first requiring an allegation of dependency, it would not have also provided for the right to bring such a termination petition in the 2008 AJJA.
“It is also unlikely that the legislature intended to foreclose a parent from filing a termination petition against another parent, but then to allow á parent to file a termination petition against the other parent when a stepparent wants to adopt the child. In S.N.W. v. M.D.F.H., 127 So.3d 1225 (Ala.Civ.App.2013), the stepfather of the child filed a petition in the probate court seeking to adopt the child. After the case was transferred to the juvenile court, the mother filed a petition to terminate the biological father’s parental rights in order for the stepfather to adopt the child. The father argued that the juvenile court lacked subject-matter jurisdiction under § 12-15-114 to terminate his parental rights because the underlying action did not begin as a dependency, delinquency, or child-in-need-of-supervision proceeding. Without referring to § 12 — 15— 115(a)(4), which provides the juvenile court-with original jurisdiction over proceedings transferred from the probate court, the Court of Civil Appeals held that § 26-10A-3, Ala.Code l975, a provision of the Alabama Adoption Code, provides that the probate court has jurisdiction over adoption proceedings and that it has jurisdiction to transfer a case to the juvenile court for the limited purpose of* terminating parental rights. The Court of Civil Appeals held that because- § 26-10A-3 does not mandate that the termination-of-parental-rights proceeding be predicated on a dependency proceeding or a finding of dependency, the juvenile court had jurisdiction to entertain the mother’s petition to terminate the father’s parental rights so as to allow the stepfather to adopt the child. We see no reason for the legislature to have provided that a parent be allowed to terminate' the parental rights of the other parent simply because a stepparent adoption is involved, but not allow a parent to bring a termination proceeding when there is no pending stepparent adoption.
“It‘ is unlikely that the legislature intended for a noncustodial parent to -be able to bring a termination petition against the custodial parent while not allowing a custodial parent to bring such a petition. In T.K. v. M.G., 82 So.3d 1 (Ala.Civ.App.2011), a majority of the Court of Civil Appeals held that, a father, who was not the custodial parent, could bring. a dependency petition against the custodial mother invoking the jurisdiction of the juvenile court under § 12-15-114. The Court of Civil Appeals concluded that for the purpose of jurisdiction of the juvenile court, having a fit noncustodial parent who is will *858 ing and able to care for the child does not preclude a juvenile court from finding that the child is dependent. It does not follow that the.legislature would prohibit a custodial parent from filing a termination petition while allowing a noncustodial parent to do so. The 2008 AJJA defines a ‘dependent child’ to include a child who ‘is in need of care or supervision’ and ‘[w]ho is without a parent, legal guardian, or legal custodian willing and able to provide for the care, support, or education of the child.’ § 12-15-102(8)a.2., Ala.Code 1975. So long as the parent is fit, it should make no difference whether that parent currently has custody.”
176 So.3d at 191-93.
We recognized in Ex parte L.J. that, while that appeal was pending; the legislature amended § 12-15-114 to indicate that its intent in enacting the 2008 amendments to the AJJA was not to change the juvenile court’s jurisdiction over all termination-of-parental-rights cases. We. held that “a juvenile court may exercise jurisdiction under § 12-15-114 over a termination-of-parental-rights claim when the subject of the termination was not a child alleged ‘to have committed a . delinquent act, to be dependent, or to be in need of supervision.’ ” Ex parte L.J., 176 So.3d at 191.
In the present case, we conclude, based on our holding in Ex parte LJ,, that the judgment of the juvenile court was not void because it did not find the child to be delinquent, dependent, or in need'of supervision. Accordingly,' we reverse the judgment of the Court of Civil Appeals and remand the cause for that court to consider any arguments that may have been pretermitted by the Court of Civil Appeals’ analysis' of the effect of § 12-15-114.
REVERSED AND REMANDED.
STUART, PARKER, MURDOCK, MAIN, WISE, and BRYAN,. JJ., concur.
SHAW, J., concurs in the result.

. As noted earlier and as noted in Ex parte L.J., an amendment to the AJJA effective April 9, 2014, deleted this language.